UNITED STATES *v.* CRECILIUS.

*(District Court, E. D. Missouri, E. D.　February 27, 1888.)*

BANKS AND BANKING—NATIONAL BANKS—MAKING FALSE ENTRIES—ERASURES—
REV. ST. U. S. § 5209.

The erasure of figures constituting part of a number already written on an account-book of a national bank and the writing of different figures in place of those erased constitutes "making an entry," within the meaning of Rev. St. U. S. § 5209, making it a misdemeanor for an officer or clerk of a national bank to make, with intent to injure or defraud, any false entry in any book, report, or statement of the bank.

On Demurrer to the Indictment.

*Thomas P. Bashaw*, U. S. Dist. Atty., for the United States.

*C. H. Krum*, for defendant.

THAYER, J. The demurrer which has been interposed to the second, fourth, and sixth counts of the indictment raises the question whether the erasure of one or more figures constituting a number already written on the books of account of a national bank, and the writing of different figures in the place of those erased, constitutes "making an entry," within the meaning of section 5209, Rev. St. U. S.

That part of the section material to the present inquiry is as follows:

"Every president, director, cashier, teller, clerk, or agent of any (national banking) association * * * who makes any false entry in any book, report, or statement of the association, with intent in either case to injure or defraud the association, or any other company, body politic or corporate, or any individual person, or to deceive any officer of the association, or any agent appointed to examine the affairs of any such association, * * * shall be deemed guilty of a misdemeanor," etc.

In three counts of the indictment under consideration, being counts Nos. 1, 3, and 5, the offense is charged generally in the words of the

statute,—that is to say, the defendant is accused of having made a false entry on three several occasions in the "General Balance Book of the Association," whereby the actual amount of cash on hand at the close of business on said three days was largely exaggerated. In counts Nos. 2, 4, and 6, the defendant is accused of making false entries in the same book, and on the same days, as in counts Nos. 1, 3, and 5; but the manner of making the entries is particularly described, and as described the false entries consisted in the erasure of certain figures of numbers previously written, and the substitution of different figures in their place. For example, it is alleged that the first two figures of the number (136,302) representing the amount of cash on hand on a given day were erased, and the figures 2 and 9 substituted, whereby the number became 296,302. It is obvious that the two sets of counts relate to the same transactions, there being only three false entries involved in the six counts. Therefore, while the demurrer only professes to question counts 2, 4, and 6, it really challenges the whole indictment; for if the erasure of figures and the substitution of others in their stead is not in effect "making an entry," within the meaning of section 5209, then, as no entry has been made, no offense has been committed which is punishable under either count of the indictment.

The contention on behalf of the defendant is that the indictment merely charges an alteration of an entry previously made which was correct when made, and that the statute has not made it an offense to alter an entry, even though the books of the association are thereby falsified. As there are no adjudications applicable to the question at issue it must be decided by a fair interpretation of the phrase "make any false entry," and also by a due consideration of the purpose of the statute, and the mischiefs intended to be guarded against. In section 5209 the word "entry" is used with reference to books of account, reports, and statements. When used in such connection Webster defines the word as "the act of making or entering a record;" that is to say, the act of making a record of a fact or transaction. But in section 5209 it is obviously used to denote the result of the act, rather than the act itself. It signifies that which is written, be it words or figures, and if that which is so written misrepresents the fact or transaction which it was intended to authenticate, then it is a false entry, within the meaning of the statute. When a person makes an entry in books of account, the act may involve, and oftentimes does involve, an alteration of an entry previously made; but the act does not lose its character on that account. An entry is made, notwithstanding the fact that a previous entry is altered. Adopting the definition before stated of the words "entry" and "false entry," it appears to me that a person makes a false entry, within the meaning of the statute, who erases one or more figures from a number already written in a book of account, and writes other figures in lieu thereof, so that the fact intended to be recorded is falsified. I can see no substantial difference between erasing certain figures of a number, and writing different ones in their place, and making an entry every part of which is in the writer's handwriting. The act in question, as I conceive,

may be correctly termed either the alteration of an entry or the making of an entry. It may appropriately be said of such an act that an "entry has been made" rather than "altered," because a new number is the result of the act, and for the reason that a new record is created which bears different testimony as to the fact or transaction intended to be authenticated. If attention is paid to the purpose which underlies the law under which the indictment is framed, there is ample ground to base an inference that the construction above given is in accordance with the legislative intent. The statute was obviously enacted to prevent bank officials and employes from concealing the actual financial condition of national banking associations, by means of a falsification of any of the books of account or statements or reports which they are by law required to make. With this purpose in view, it cannot be supposed for a moment that the law was framed with a view of punishing persons who made original false entries, and, at the same time, of exempting from punishment those who falsified correct entries previously made, by erasing figures and substituting different ones in their stead. I think it is too clear for argument that congress intended, at least, to punish such acts as are described in the second, fourth, and sixth counts of the indictment, and I am furthermore of the opinion that, by the prohibiting "the making of any false entry," and imposing a penalty for so doing, they have used language fully adequate to that purpose.

For the purpose of showing that congress did not intend, by section 5209, to make it an offense to alter entries in the books of national banks, my attention was called, on the argument, to numerous sections of the Revised Statutes, whereby it has been made an offense against the United States to alter public books, documents, and instruments, such as court records, surveys, maps, patents, bonds, treasury notes, powers of attorney, money-orders, etc. An examination of each of those sections—5394, 5411, 5414, 5415, 5416, 5418, and 5463—shows, however, that in every instance the word "alter" was aptly used; in every instance there was an apparent necessity for the use of the word "alter," as it described an act not distinctly covered or embraced by any preceding word. But in the section under consideration there was no apparent need of making use of any additional words or phrases. The section prohibits every officer or employe of a national bank from making "any false entry in any book, report, or statement." The language so used was sufficiently comprehensive to forbid a falsification of the books of a national bank in any manner, whether it was accomplished by an original false entry or by changing an entry already made. In either event it would be necessary to write in the books,—to make an entry of some sort,—and if the words or figures so written falsified the fact or transaction intended to be authenticated, the act would necessarily be within the prohibition of the statute.

As a further reason for sustaining the demurrer it was suggested that the acts described in the second, fourth, and sixth counts may have amounted to a forgery. I assume that by this counsel intended to say that if the act amounted to a forgery defendant cannot be punished un-

der section 5209, although the act falls within the provisions of that section. With reference to such suggestion it is sufficient to say that if it be conceded that a falsification of the books of a national bank, committed under such circumstances as to amount to a forgery, could not be punished under section 5209, yet such concession cannot avail the defendant on demurrer, for the reason that the demurrer admits the facts pleaded in the indictment; and as the offense is there stated, it clearly did not amount to a forgery. *In re Windsor*, 6 Best & S. 522, 10 Cox, Crim. Cas. 118; *State* v. *Young*, 46 N. H. 266; 1 Bish. Crim. Law, § 586.

I think the demurrer should be overruled, and it is so ordered.